

FILED
CLERK, U.S. DISTRICT COURT

JUN 26 2012

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

1  Kaushal Niroula
2  *Defendant In Pro Per*
   Booking # 200910575
3  Indio Jail
   Post Office Box 1748
4  Indio, California 92201

5  **IN THE UNITED STATES DISTRICT COURT**
6  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

7  **KAUSHAL NIROULA,**            CASE NO. EDCV 12-814 VAP (JC)
        *Plaintiff,*
8                                  **OBJECTION TO PROPOSED STAY**
9  v.                              **ORDER**
                                        **JUNE 23RD 2012**
10 **DANIEL C. GARCIA, ET AL.**
       *Defendants*                _____
11

12
13  **TO: THE HONORABLE JACQUELINE CHOOLJIAN,**
    **MAGISTRATE/JUDGE OF THE UNITED STATES DISTRICT**
14  **AND ALL COUNSEL OF RECORD HEREIN:**

15        **NOW INTO COURT**, appearing In Proper Person, comes Plaintiff, Kaushal Niroula,
16  who files herein his objection prior to June 26, 2012, of the proposed stay order pending the
17
    outcome of his criminal trial. In Support, Mover shows the following:
18
19        Plaintiff, Kaushal Niroula, is presently at trial with Defendant, Daniel Garcia, as co-
20  defendants. On Tuesday, June 12th, 2012, the Honorable David B. Downing, Superior Court
21  Judge of Riverside County at Indio, heard testimony from Denise Shaw, Esq., which established
22  that privileged telephone conferences between herself and Kaushal Niroula, discussing matters
23  previously ordered under seal by the Honorable Charles F. Haines, Superior Court Judge from
24
25  San Francisco, had been intercepted, recorded and distributed by the Riverside County Sheriff's
26  Office and thereafter through discovery by the Office of the District Attorney.  In addition, other
27  similar phone calls between Mark Sullivan, Esq, and Kaushal Niroula had been similarly
28

1

1   intercepted, recorded and distributed by the Riverside County Sheriff's Office and thereafter

2   through discovery by the Office of the District Attorney.  Ms. Shaw testified that she personally

3   registered with the Sheriff's Office which was supposed to insure that the telephone calls by her

4

5   and Mr. Sullivan would NOT be subject to monitoring, interception, or distribution.

6        The Honorable David B. Downing found that this testimony established a prima facie

7   violation of 18 U.S.C. § 2510, et seq. (Title III).

8        In addition, Ms. Demi Tolbert, Esq., testified that in two different Riverside County

9
    locations, she attempted to engage in privileged face to face oral communications with existing
10
    clients. In both instances, deputies of Riverside County Sheriff's Department refused to retreat.
11

12   When confronted, Ms. Tolbert was informed that the policy of the Riverside County Sheriff's

13   Office is that there are no privileged communications honored.  She was further informed that

14   the policy requires that these "privileged" communications be monitored and reported to higher

15
    authorities, although none of the confidential, privileged information acquired by these law
16
17   enforcement eavesdroppers could be "used in Court".

18        The Honorable David B. Downing found that this testimony was credible.

19        Finally, during the testimony of James M. Atkinson, a world renowned expert in TSCM

20
    (Technical Surveillance Countermeasures), Atkinson (see: www.tscm.com) established that the
21

22   attorney booths located in the Riverside County Jail at Indio contained two (2) hook switch

23   bypassed telephones pursuant to a Court authorized covert inspection conducted on Monday,

24   June 11, 2012, by Atkinson.

25   A hook switch bypassed telephone is an eavesdropping device which operates by

26
    allowing room audio to be obtained through either the telephone's earpiece or mouthpiece while
27

28   the phone is hung up.  He further testified that there is no legitimate reason to possess a hook

switch bypassed telephone except when used as a law enforcement telephone during hostage negotiations which allows law enforcement to hear room audio inside the site of the hostages and hostage taker or terrorist. Attached and annexed hereto as **Exhibit "A"** *in globo* is the report and declarations submitted to the Superior Court by Atkinson.

In addition, Enrique Tira, a licensed in good standing California private investigator, took a sworn statement on May 4, 2012, from Daniel Garcia. As reflected in Garcia's statement, a copy of which is attached and annexed hereto as **Exhibit "B"**, Garcia described in detail the bulk of the privileged and illegally obtained conversations of Niroula with various attorneys. Garcia further related that he fully intends to utilize these illicit recordings, provided to him by the Office of District Attorney, against Niroula in the ongoing trial.

Finally, Plaintiff, Kaushal Niroula suffers from a terminal affliction. Mover's life expectancy has a limited prognosis. Any stay in this proceeding, is prejudicial to him since a normal life expectancy is inapplicable to this Mover.

## LAW & ANALYSIS

Federal courts have a virtually unflagging obligation to exercise the jurisdiction conferred upon them. *Goux v. Eckerd Corp.*, 124 F.Supp.2d 432 (W.D. La. 2000); *Holden v. Connex-Metalna Management Consulting GmbH*, 302 F.3d 358 (5th Cit. La. 2002); *Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 538 (5th Cir. Tex. 2002); *Bank One, N.A. v. Boyd*, 288 F.3d 181 (5th Cir. Miss. 2002); *Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382 (5th Cir. Tex. 2001); *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647 (5th Cir. Tex. 2000); *Murphy v. Uncles Ben's, Inc.*, 168 F.3d 734 (5th Cir. Tex. 1999); *Chicot County v. Sherwood,* 148 U.S. 529, 13 S.Ct. 695, 37 L.Ed. 546 (1893); *McClellan v. Carland,* 217 U.S. 268, 282, 30 S.Ct. 501, 54 L.Ed. 762 (1910); *Moses H. Cone Memorial Hosp. v. Mercury*

3

1   *Construction,* 460 U.S. 1, 14-15, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); ***New Orleans Public***

2   ***Service, Inc. v. Council of the City of New Orleans,*** 491 U.S. 350, 109 S.Ct. 2506, 2513, 105

3   L.Ed.2d 298 (1989); ***Ankenbrandt v. Richards***, 112 S.Ct. 2206 (1992); ***McCarthy v. Madigan,***

4   112 S.Ct. 1081 (1992).

5

6   When parallel state and federal litigation exists, a federal court's balance in determining

7   whether or not to exercise its jurisdiction must be heavily weighted in favor of exercising

8   jurisdiction. ***Signad, Inc. v. City of Sugar Land***, 753 F.2d 1338 (5th Cir. Tex. 1985), ***certiorari***

9

10  ***denied***, 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985).

11  Stated another way, a federal court having jurisdiction should exercise it unless a

12  compelling reason not to do so can be demonstrated. ***Belcher Co. of Alabama, Inc. v. M/V***

13  ***Maratha Mariner***, 724 F.2d 1161 (5th Cir. Tex. 1984). "The circumstances in which federal

14  courts should decline to exercise their jurisdiction are carefully defined and remain the exception

15  not the rule." ***Hoye v. City of Oakland***, 653 F.3d 835 at 843 (9th Cir. Ca. 2011) (citing *Gilbertson*

16

17  *v. Albright*, 381 F.3d 965).

18  Respectfully, there is no compelling reason for this Honorable Court to decline its

19  jurisdiction.

20  The very purpose of § 1983 is to interpose the federal courts between the States and the

21

22  people, as guardians of the people's federal rights - to protect the people from unconstitutional

23  action under color of state law whether that action be executive, legislative or judicial. ***Duke v.***

24  ***State of Tex.***, 477 F.2d 244, 254 (5th Cir. Tex. 1973), ***rehearing denied***, 478 F.2d 1402 (5th Cir.

25  1973), ***certiorari denied***, 415 U.S. 978, 94 S.Ct. 1565, 39 L.Ed.2d 874 (1974); *citing*, ***Mitchum***

26  ***v. Foster***, 407 U.S. 225, 242, 92 S.Ct. 2151, 2162, 32 L.Ed. 705 (1972); *see also*, ***Heck v.***

27

28  ***Humphrey***, 114 S.Ct. 2364, 2380, 512 U.S. 477, 501, 129 L.Ed.2d 383 (1994); ***Pennzoil Co. v.***

*Texaco, Inc.*, 481 U.S. 1, 19, 107 S.Ct. 1519, 1530, 95 L.Ed.2d 1 (1987); *Davidson v. Cannon*, 474 U.S. 344, 359, 106 S.Ct. 668, 676, 88 L.Ed.2d 677 (1986); *Pulliam v. Allen*, 466 U.S. 522, 541, 104 S.Ct. 1970, 1980, 1981, 80 L.Ed.2d 565 (1984); *McDonald v. City of West Branch, Michigan*, 466 U.S. 284, 290, 104 S.Ct. 1799, 1803, 80 L.Ed.2d 302 (1984); *Patsy v. Board of Regents of Fla.*, 457 U.S. 496, 503, 102 S.Ct. 2557, 2561, 73 L.Ed.2d 172 (1982); *Juidice v. Vail*, 430 U.S. 327, 342, 97 S.Ct. 1211, 1220, 51 L.Ed.2d 376 (1977); *Aldinger v. Howard*, 427 U.S. 1, 34, 96 S.Ct. 2413, 2429, 49 L.Ed.2d 276 (1976); *Preiser v. Rodriguez*, 411 U.S. 475, 516, 93 S.Ct. 1827, 1849, 36 L.Ed.2d 439 (1973).

The U.S. Constitution does not require a court to stay civil proceedings pending the outcome of criminal actions. *Federal Sav. & Loan Ins. Corp. v. Molinaro*, 889 F.2d 899, 902 (9th Cir.1989); *citing*, *Securities & Exchange Com'n v. Dresser Indus.*, 628 F.2d. 1368, 1375 (D.C. Cir. 1980); *see also*, *Brumfiled v. Shelton*, 831 F.Supp. 562 (E.D. La. 1993). A stay of a pending civil action until the outcome of a related criminal proceedings is an extraordinary remedy. *Weil v. Markowitz*, 829 F.2d 166, 174 (D.C. Cir. 1987). Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another cause settles issues that may define the rights of both. *Landis v. North American Co.*, 299 U.S. 248, 252-56, 57 S.Ct. 163, 165-66, 81 L.Ed. 153 (1936).

The movant for a stay must make out a clear case of hardship or inequity in being required to go forward. *Wedgeworth v. Fibreboard Corp.*, 706 F.2d 541 (5th Cir. La. 1983); *citing*, *Landis*, 57 S.Ct. 163, 165- 66, *supra*; *see also*, *Brumfield*, 831 F.Supp. 562, *supra*.

The mere relationship between criminal and civil proceedings, and the resulting prospect that discovery in the civil case could prejudice the criminal proceeding, does not establish the

1    requisite *good cause* for a stay.  *U.S. v. 6600 North Mesa, El Paso, Texas*, 903 F.2d 312, 320

2    (5th Cir. Tex. 1990); *U.S. v. Gieger Transfer Service, Inc.*, 174 F.R.D. 382 (S.D. Miss. 1997).

3         Numerous cases hold that parallel criminal and civil trials are not objectionable in

4    themselves.  *Hoover v. Knight*, 678 F.2d 578, 581 (5th Cir. 1982); *S.E.C. v. First Financial*

5    *Group of Texas*, 659 F.2d 660, 667 (5th Cir. 1981); *United States v. Kordel*, 397 U.S. 1, 11-13

6    (1970).

7

8         In a civil case, there is a strong presumption in favor of discovery, and the proponent of a

9    stay must overcome that strong presumption in its request for a stay, by establishing the requisite

10   *good cause*.  Milton Pollack, *Parallel Civil and Criminal Proceedings*, 129 F.R.D. 201, 209

11   (1990); *Gieger Transfer*, 174 F.R.D. 382, *supra*.

12
13        *Good cause* requires more than the mere possibility of prejudice.  It has been repeatedly

14   held, that allegations of prejudice to a criminal case from civil discovery are conclusory and

15   insufficient to warrant a stay.  *Id.*;  *see also*, *United States v. One Parcel of Real Estate at 1303*

16   *Whitehead St.*, 729 F.Supp. 98, 99 (S.D. Fla. 1990); *United States v. One Parcel of Real Estate*

17   *Located at 12525 Palm Road*, 731 F.Supp. 1057 (S.D. Fla. 1990); *Campbell v. Eastland*, 307

18
19   F.2d 478 (5th Cir. Tex. 1962), *certiorari denied*, 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502

20   (1963).

21        At this stage of this civil action, Mover avers it cannot be shown (1) a substantial

22   likelihood that the Defendants will prevail on the merits, (2) a substantial threat of irreparable

23   injury if the stay is denied, (3) that the threatened injury to them outweighs any threatened injury

24
25   to Mr. Garcia or other unknown Defendants, *and* (4) that granting the requested stay will not

26   serve any public interest.

27

28

Regarding the federal law of abstention or what is referred to as the abstention doctrine, where a federal court declines completely, to exercise jurisdiction, ***Younger v. Harris***, 401 U.S. 37, 45, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), holds that a federal court cannot interfere with a pending state criminal proceeding absent extraordinary circumstances. However, the ***Younger*** abstention doctrine is not applicable to a claim for damages under § 1983. ***Allen v. Louisiana State Bd. of Dentistry***, 835 F.2d 100, 104 (5th Cir.1988), ***cert. denied***, 503 U.S. 1006, 112 S.Ct. 1764, 118 L.Ed.2d 426 (1992) (requests for monetary damages do not fall within the purview of the ***Younger*** abstention doctrine); *see also*, ***Bishop v. State Bar of Texas***, 736 F.2d 292, 295 (5th Cir. Tex. 1984); ***Davis v. Zain***, 79 F.3d 18 (5th Cir. Tex. 1996), ***certiorari denied***, 523 U.S. 1023, 118 S.Ct. 1307, 140 L.Ed.2d 472 (1998).

For example, in ***Signad, Inc. v. City of Sugar Land***, 753 F.2d 1338 (5th Cir. Tex. 1985), ***cert. denied***, 474 U.S. 822, 106 S.Ct. 75, 88 L.Ed.2d 61 (1985), the Federal Fifth Circuit Court of Appeals noted the unflagging obligation of federal courts to exercise jurisdiction given them and that it is particularly weighty when the plaintiff seeking a hearing in federal court is asserting his right to relief under § 1983; *citing*, ***Tovar v. Billmeyer***, 609 F.2d 1291, 1293 (9th Cir. 1979); *see also*, ***Hunt v. Rodriguez***, 468 F.2d 615, 616 (5th Cir. Tex. 1972). In ***Abend v. City of Oakland***, WL 627916 (N.D. Cal 2007), the Federal Ninth Circuit Court of Appeals raised similar concerns.

*A fortiori ratione a majori ad minus*, if a federal court may not abstain from exercising jurisdiction in a case where a claim for damages under § 1983 has been filed by a civil plaintiff, and where there is a parallel criminal case pending against *the same civil plaintiff*, a federal court should not be allowed to stay a claim for damages under § 1983 by a civil plaintiff, where there is a criminal case pending against a *completely different individual*, merely because the civil action of the plaintiff is based upon the unconstitutional acts of the executive during the

7

investigation that allegedly supports the executive's charges against the *completely different individual* accused, in the separate criminal action.

Some courts have stated that, irrespective of particular conditions, there is no power by a stay, to compel a litigant to wait upon the outcome of a controversy to which he is a stranger. *Dolbeer v. Stout*, 139 N.Y. 486, 489, 34 N.E. 1102; *Rosenberg v. Slotchin*, 181 App.Div. 137, 138, 168 N.Y.S. 101; *cf. Wadleigh v. Veazie*, Fed.Cas.No.17,031; *Checker Cab Mfg. Co. v. Checker Taxi Co.*, 26 F.2d 752 (D.C. Circuit); *Jefferson Standard Life Ins. Co. v. Keeton*, 292 F. 53.

In the instant case, Defendant, Daniel Garcia, did not actively participate in the acquisition of the unlawful intrusions into Niroula's privileged communications; however, a stay of these proceedings will injure and prejudice Niroula's right to a fair trial. Furthermore, Mr. Garcia is state's witness in numerous cases in which Mr. Niroula has been charged with a crime. Because these cases are scattered in multiple counties including San Francisco, Marin and Riverside, Federal intervention is appropriate. If this case is stayed, it will do irreparable harm to Mr. Niroula's due process rights.

Despite Niroula's potential criminal culpability in his ongoing criminal trial, he has no unclean hands or responsibility for the illegal interception of Niroula's privileged communications with his attorneys. Furthermore, Mr. Niroula has been diagnosed with a terminal illness for which there is no cure. If this proceeding is stayed, he almost assuredly will not live long enough to seek relief on this matter.

## CONCLUSION

Based upon the facts and current law, this Court's Proposed Stay Order should be denied and Plaintiff, Kaushal Niroula, should be permitted to obtain relief from this Court preserving the sanctity of his privileged communications while simultaneously advancing discovery to determine the perpetrators and culpability of those who illegally participated in wiretapping his privileged telephone calls in this civil action.

Dated this 24th day of June, 2012, at Indio, California.

Respectfully submitted,

*Kaushal Niroula*

Kaushal Niroula, *A Propria Persona*
Defendant In Pro Per

9

**CERTIFICATE OF SERVICE:**

**I HEREBY CERTIFY** that I have delivered a copy of the above and foregoing pleading unto the Clerk of Court in and for the United States District Court, Central District of California, on this the 24th day of June, 2012, and upon receipt of same, the said Clerk shall and will scan and electronically lodge a copy of this self-same pleading, which lodging, when done, shall and will be promulgated unto the litigants herein by the Court's CM/ECF system, thereby fully satisfying all requirements of notice upon all parties to this litigation and their counsel. In addition, defendant Daniel Garcia was served with a copy of this pleading at the Indio Jail Facility.

*Kaushal Niroula*
_____
Kaushal Niroula

Objection to Proposed Stay or Proceedings - EDCV 12-814 VAP (JC)

KAUSHAL NIROULA
Booking No. 200910575
P.O. Box 1748
Indio, California 92202
kniroulalegalfiling@gmail.com

Defendant in Pro Per



SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 1 1 2012

K. HINOS

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE, INDIO BRANCH

THE PEOPLE OF THE STATE OF
CALIFORNIA,

Plaintiff

Vs.

KAUSHAL NIROULA, et. Al.

Defendants

Case No.: INF064492

ORDER TO RIVERSIDE SHERIFF TO
PERMIT PRIVILIGED VISITATION
FOR JIM ATKINSON EXPERT WITH
KAUSHAL NIROULA IN PRO PER

It is hereby ordered to Stanley Sniff Sheriff of the County of Riverside and any and all

incarceration facilities operated within his jurisdiction to forthwith permit James

Atkinson Defense Expert Massachusetts Driver's License Number: SO6264947 to

conduct a legal privileged consultation visitation inside any and all Riverside Sheriff

operated jails throughout the pendency of this case and during the entire period of Mr.

Niroula's incarceration in the county jails operated by the Riverside Sheriff.

Thus Ordered on this 11ᵗʰ day of, June 2012 at Indio California.



Hon. David B Downing
Superior Court Judge

- 1 -

ORDER FOR JAMES ATKINSON DEFENSE EXPERT.

1   KAUSHAL NIROULA
    Booking No. 200910575
2   P.O. Box 1748
    Indio, California 92202
3   kniroulalegalfiling@gmail.com
    Defendant in Pro Per
4

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 1 1 2012

K. HINOS

5
6          SUPERIOR COURT OF THE STATE OF CALIFORNIA
7              COUNTY OF RIVERSIDE, INDIO BRANCH
8
                                    | Case No.: INF064492
9   THE PEOPLE OF THE STATE OF
10          CALIFORNIA,              | **SEALED ORDER** FOR JIM ATKINSON
                                      TO CONDUCT AN INITIAL VISUAL
11              Plaintiff            | TSCM INSPECTION DURING
                                      VISITATION WITH KAUSHAL
12              Vs.                  | NIROULA INSIDE THE INDIO JAIL.
13   KAUSHAL NIROULA, et. Al.
14          Defendants
15

16  It is hereby Ordered with good cause appearing that James Atkinson TSCM Expert is

17  permitted to conduct an initial visual TSCM Inspection during his privileged visitation

18  with Kaushal Niroula in pro per at the Indio Jail.

19  Additionally Mr. Atkinson is also permitted to take pictures of all the electronic devices

20  present inside the attorney visitation booths and prepare an initial TSCM report as to the

21  adequacy of the attorney booths for the purposes of having privileged communications.

22  Thus Ordered and Issued Under Seal on the __11th__ day of June 2012

23

24

25

26          Hon David B Downing

27          Superior Court Judge

28

-2-

ORDER FOR JAMES ATKINSON DEFENSE EXPERT.

1  KAUSHAL NIROULA
   Booking No. 200910575
2  P.O. Box 1748
   Indio, California 92202
3  kniroulalegalfiling@gmail.com
4  Defendant in Pro Per

```
F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF RIVERSIDE

JUN 1 1 2012

K. HINOS
```

5          SUPERIOR COURT OF THE STATE OF CALIFORNIA
6             COUNTY OF RIVERSIDE, INDIO BRANCH
7

8                                          Case No.: INF064492

9   THE PEOPLE OF THE STATE OF          ORDER FOR JAMES ATKINSON TO
10        CALIFORNIA,                   BE PRESENT IN COURT TO ASSIST
                                        KAUSHAL NIROULA IN PRO PER
11          Plaintiff                   AND ADVISORY COUNSEL S
                                        STEPHEN SPRING.
12           Vs.

13  KAUSHAL NIROULA, et. Al.

14          Defendants
15

16  The Court being advised and informed in the premise and good cause appearing
17  wherefore it is hereby ordered, that James Atkinson Defense Expert is Ordered upon
18  request by Kaushal Niroula in Pro per to be present in Court for testimony at 8:30 AM on
19  June 12th 2012 for the Babble Tape Motion and subsequently on June 13th 2012, June 14th
20  2012 and June 15th 2012 for Technical Analysis on a sealed matters, sealed logistics,
21  technical analysis of sealed exculpatory evidence and any testimony to be offered on such
22  between June 12th to June 15th 2012.
23  Thus Ordered , on the _11_ day of June 2012 at Indio California
24
25
26
27          Hon David B Downing
28          Superior Court Judge

                              - 3 -

            ORDER FOR JAMES ATKINSON DEFENSE EXPERT.

KAUSHAL NIROULA
Booking No. 200910575
P.O. Box 1748
Indio, California 92202
kniroulalegalfiling@gmail.com
Defendant in Pro Per

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF RIVERSIDE, INDIO BRANCH

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br><br> Plaintiff <br><br> Vs. <br><br> KAUSHAL NIROULA, et. Al, <br><br> Defendants | Case No.: INF064492 <br><br> **MOTION FOR COURT ORDER AUTHORIZING MOVER'S USE OF "BABBLE" TAPE DURING ATTORNEY VISITS** <br><br> 15 June 2012 |

**MOVER'S EXHIBIT – TSCM INSPECTION REPORTS (2)**

**WITH DECLARATIONS OF JAMES M. ATKINSON**

**ONE (1) PHYSICAL EXHIBIT (NOT SEALED)**

*IN GLOBO*

**PROVIDED BY JAMES M. ATKINSON**



KAUSHAL NIROULA
Booking No. 200910575
P.O. Box 1748
Indio, California 92202
kniroulalegalfiling@gmail.com
Defendant in Pro Per

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE, INDIO BRANCH

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff<br><br>Vs.<br><br>KAUSHAL NIROULA, et. Al,<br><br>Defendants | Case No.: INF064492<br><br>DECLARATION OF JAMES M. ATKINSON REGARDING FIRST VISUAL TSCM INPSECTION.<br><br>15 June 2012 |

I, JAMES M. ATKINSON, hereby declares:

1.      Pursuant to the sealed order which I received from the Honorable David B. Downing, Superior Court Judge for Riverside County at Indio, ordering a visual TSCM inspection of the Indio Jail Attorney Booth(s), I arrived on June 12, 2012, at 12:46 AM.

2.      I arrived at the Indio Jail to perform a visual TSCM Inspection of the "East" Attorney-Client visitation booth.

3.      During this visit, I tested and identified that the room was not soundproof.

4.      I further determined with both visual and physical inspection, that two telephones in the attorney-client booth, reserved for privileged attorney communications, had been modified with a "Hook Switch Bypass". This modification turns telephones into eavesdropping devices.

5.      There is no legitimate reason to modify a normal telephone by using a hook switch bypass.

- 1 -

DECLARATION OF JAMES M. ATKINSON

6.     The "Hook Switch Bypass" was witnesses by Jared Scheinuk, Court appointed Law Clerk, and Kaushal Niroula. Both witnessed the inspection, and confirmed the passage of audio signals where no audio signal should be present.

7.     Also, this "Hook Switch Bypass" was subsequently confirmed by S. Stephen Spring,II, Pro Hac Vice advisory counsel for Kaushal Niroula. Mr. Spring has extensive training and experience in TSCM and myself during to additional visits on later dates. Mr. Spring is also a member of the Association of Former Intelligence Officers, whom I sponsored for membership premised upon his former association with INSCOM with published articles on the subject.

8.     I also discovered a visitation intercom system that was configured in a way so as to permit eavesdropping of the conversations in the booth by an eavesdropper. I was able to conduct a visual trace of the wires for this system into the walls. Since the Court's order did not authorize a full, instrumented technical inspection, I was unable to trace the wires out of this booth to any listening post within the jail.

9.     Upon departing the Indio jail, I observed a video surveillance system installed just above the door of this room. I observed the quad camera multiplexer video monitor in the guard booth for this camera. The camera is positioned in such a way that it creates an approximate 2 foot deep "blind spot". The blind spot is present at the door to this room which can enable an eavesdropper to simply stand just outside this door and eavesdrop with the naked ear. My inspection and testing established that it is possible to secure clear audio leaking out of this room without being captured on the jail's internal video surveillance camera.

10.     Additionally, during this visit, I could hear, with my unaided and naked ear, people in the room behind the inmate side of the booth in an area described to be as a bathroom.

11.     Though the wall on the inmates' side of the booth, and thence though the plexiglass window, and then to the attorney side of the booth, I was able to hear human generated noises to include coughing, flatulence, and clearing of someone's throat.

12.     The sounds I clearly heard, did not appear to be conducted by pipes in the walls as the quality of the sound in different with pipe conducted sounds of the toilet lid being put down, the toilet being flushed, and related sounds.

13.    It is my impression that these are either cracks in the wall, or holes present allowing human voices present in the inmate side of this booth to travel to the bathroom or other rooms on the other side of the wall.

14.    During this visit I took 111 digital photographs which are presented under Court ordered seal.

15    Immediately after departing the Jail at 2:25 AM, at 2:48 PM on the same date, I backed up these images to a secure server in Belgium (the country) to preserve the images against loss, should the sealed filing be lost or destroyed.

16.    Due to the covert method of photography used, only about half of these images are in focus and legible. However, none of these images include matters affecting jail physical security (ie: no door locks, hinge positions, locks, security devices, rivets, or other methods of jail security were taken) in my opinion.

*Further Affiant Sayeth Naught.*

**JAMES M. ATKINSON**

**SWORN TO AND SUBSCRIBED**, before me, Notary Public, in and for Riverside County, California, after due reading of the whole.

Notary Public- State of California
Notary Name: Lizeth Jimenez
Notary ID No. 1848857
My Commission Expires: May 12, 2013

LIZETH JIMENEZ
COMM. # 1848857
NOTARY PUBLIC-CALIFORNIA
RIVERSIDE COUNTY
MY COMM. EXP. MAY 12, 2013

- 3 -

DECLARATION OF JAMES M. ATKINSON

KAUSHAL NIROULA
Booking No. 200910575
P.O. Box 1748
Indio, California 92202
kniroulalegalfiling@gmail.com
Defendant in Pro Per

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE, INDIO BRANCH

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF<br>CALIFORNIA,<br><br>Plaintiff<br><br>Vs.<br><br>KAUSHAL NIROULA, et. Al,<br><br>Defendants | Case No.: INF064492<br><br>DECLARATION OF<br>JAMES M. ATKINSON RECARDING<br>SECOND VISUAL INSPECTION<br><br>15 June 2012 |

I, JAMES M. ATKINSON, hereby declares:

1.  While engaged in a visit to the Indio Jail with S. Stephen Spring, II , Pro Hac Vice Advisory Counsel for Kaushal Niroula; and Jared Scheinuk, Law Clerk, I performed a visual re-inspection of the Attorney-Client booths at Indio Jail.

2.  However, during this second inspection no photographs were taken (per the order of this court), nor were any of the electronic systems inspected, and merely the naked eye and naked ear was used.

3.  During this visual (naked eye and naked ear) inspection, the hook switch bypass was found to still be active in two phones.

4.  Further, physical trace evidence was found with suggests that  between the visitation

by the Court mid-day (post testimony by JMA), and the late night visitation (from 9:20 PM and 10:10 PM on 6/12/2012) by myself, Steve, and Jared. This trace evidence was not present in the booth the night before, nor was this trace evidence present in the booth when the booth was visited by the court. Thus trace evidence was created or arrived in the booth AFTER the unannounced visit by the court, yet before the late night visit by myself, Stephen Spring, and Jared Scheinuk.

     5.  This trace evidence consists of two pieces of plastic insulation (most likely poly(vinyl chloride)) thermoplastic insulation for conducting wires, and one segment of what appears to be solid copper wire.

     6.  One piece of insulation is RED in color, the second piece of insulation is BLUE in color, the wire is the color of bare copper.

     7.  The RED and BLUE insulation is of a different length, suggesting a poorly trained eavesdropper.

     8.  The BLUE wire is also torn on the side where it was hastily torn from the copper wire it protected, again suggesting a poorly skilled eavesdropper.

     9.  The copper wire that was found is roughly the length of the RED insulation segment, suggesting that the RED wire was cut with tools (improperly used), but with the BLUE wire the insulation was merely ripped loose.

     10. The gauge of the wire suggests that it is in fact TELEPHONE wire, and the color further suggest that this is TELEPHONE wire.

     11. The BLUE piece was found near the back wall. The RED piece and copper wire was found directly below the wall mounted telephone, suggesting that this wire can then the phone wiring inside the wall. As the BULUE and RED insulation pieces appear to be of the same

DECLARATION OF JAMES M. ATKINSON

gauges, and would normally be found in telephone wiring color codes. This thus links the RED and BLUE insulation segments with the copper wire, and thus to the wall mounted telephone.

12. The cutting of these wires after the court visit, yet before my reinspection suggests that there was a hasty removal of an eavesdropping device, likley a hot wired microphone.

13. Also, markings on the phone suggest that it had either been replaced or modified prior to 9:20 PM, but after 12 noon on 6/12/2012.

14. It is my professional opinion that employees hastily removed an illicit eavesdropping device from the wall mounted phone or wiring going to the phone, and that the persons who removed this device/modification used the improper tools, and dropped these three pieces of evidence.

15. The discoverer of these three items was witness by Stephen Spring and Jared Scheinuk.

*Further Affiant Sayeth Naught.*

JAMES M. ATKINSON

**SWORN TO AND SUBSCRIBED**, before me, Notary Public, in and for Riverside County, California, after due reading of the whole.

Notary Public, State of California
Notary Name: Keith Jimenez
Notary ID No. 1848857
My Commission Expires: May 12, 2013

- 3 -

DECLARATION OF JAMES M. ATKINSON

KAUSHAL NIROULA
Booking No. 200910575
P.O. Box 1748
Indio, California 92202
kniroulalegalfiling@gmail.com
Defendant in Pro Per

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF RIVERSIDE, INDIO BRANCH

|  |  |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, <br> Plaintiff <br> Vs. <br> KAUSHAL NIROULA, et. Al, <br> Defendants | Case No.: INF064492 <br><br> **MOTION FOR COURT ORDER AUTHORIZING MOVER'S USE OF "BABBLE" TAPE DURING ATTORNEY VISITS** <br><br><br> 15 June 2012 |

**MOVER'S EXHIBIT – TSCM INSPECTION REPORTS (2)**

**WITH DECLARATIONS OF JAMES M. ATKINSON**

**ONE (1) PHYSICAL EXHIBIT (NOT SEALED)**

*IN GLOBO*

**PROVIDED BY JAMES M. ATKINSON**





EXHIBIT TSCM REPORTS, EXHIBIT BY JAMES M. ATKINSON

KAUSHAL NIROULA IN PRO SE
ENRIQUE TIRA INTERVIEW WITH D. GARCIA

1.

2.

3.           **Interview between Enrique Tira and Daniel Carlos Garcia on 5-4-12**

4.    Tira: Its May 4th and its 4:07 pm.  I'm talking to Danny Garcia. I've got the tape recorder in

5.    front of me. You agree to be tape recorded correct?

6.    Garcia: Yes

7.    Tira: I've got Billy Picard here also assisting with the interview. We are here at the dept of 1b at

8.    Indio.

9.    Tira: Mr. Garcia so you have reviewed the CDS and discovery that was provided to you in

10.   Discovery?

11.   Garcia: Yes

12.

13.   Tira: Did you review all cd's?

14.   Garcia: Yes, I've reviewed about 150 CDS provided.

15.   Tira: In listening to these CDS you have also listened to jail calls of Kaushal Niroula?

16.   Garcia: Yes I believe that there was about 6 CDS containing jail calls, and I listened to all that

17.   were provided.

18.   Tira: And you have come to realize that some of these calls are to attorneys?

19.   Garcia: Subsequent to listening to them, yes, I discovered some of the calls were to attorneys.

20.   Tira: Do you recall any of the names of the attorneys that were in the CDS?

21.   Garcia: Yes, specifically George Lazarus, Robert Amparan, Chelsea Nelson, Angela Bean,

22.   Gregory Johnson, and Stephen Swiegart, however there were other calls to people who sounded

23.   like they may have been attorneys, but I could not recognize their voices.

24.

25.   Tira: Is that all you remember of the attorneys that were in the privileged phone calls made by

26.   Niroula?

27.

28.                    DANIEL CARLOS GARCIA INTERVIEW ON MAY 5 2012                    1

KAUSHAL NIROULA IN PRO SE

1.  ENRIQUE TIRA INTERVIEW WITH D. GARCIA

2.  Garcia: Actually there were a couple of additional ones I believe: Geoffrey Rotwein, Stuart

3.  Hanlon, and a couple of calls to receptionists at other law offices.

4.  Tira: Mr. Garcia you also have an adverse interest to Mr. Niroula correct?

5.  Garcia: Absolutely.

6.  Tira: Can you explain?

7.  Garcia: We are jointly charged codefendants accused of a criminal conspiracy so obviously we

8.  have competing defenses and competing interests. I am also a witness against Mr. Niroula in

9.  several other pending cases.

10.

11.  Tira: Would you say you have gained knowledge of Mr. Niroula's defense and his Work Product

12.  strategy as to what his defense would be?

13.  Garcia: Absolutely.

14.  Tira: How is that?

15.  Garcia: By listening to his conversations with attorneys and various other parties assisting in his

16.  defense. Mr. Niroula discussed intimate details regarding the facts and merits of the case as well

17.  as potential motions he would be filing and his general strategy for his defense

18.  Tira: Have you prepared your defense in accordance to learning that strategy?

19.  Garcia: Yes I have.

20.  Tira: And would you be presenting evidence that you have accumulated and gathered and

21.  investigation you have furthered based upon the listening of these phone calls?

22.

23.  Garcia: Yes, I've issued subpoenas for records, based off of listening to Mr. Niroula's calls, for

24.  his personal financial and communication records.  I've also discovered witnesses who would be

25.  adverse to his interest that I do intend to call at trial as well as understanding his general strategy

26.  and potential avenues to impeach his defense.

27.

28.

KAUSHAL NIROULA IN PRO SE
ENRIQUE TIRA INTERVIEW WITH D. GARCIA

Tira: And you reviewed them in the general course of discovery which was given to you by the

Riverside District Attorney Lisa DiMaria upon unlawful wiretap of Mr. Niroula's calls?

Garcia: As far as I know, the calls were provided in the general course of discovery. I have no

firsthand knowledge as to where she obtained the calls.

Tira: Everything you just stated right now is that true and correct, and if you were to be called as

a witness under oath is this what you would be stating to?

Garcia: Yes, to the best of my knowledge.

Tira: Ok, we will conclude the interview at 4:12 pm.

**I declare under penalty of perjury that the foregoing is accurately transcribed.
Dated:  May 27, 2012, at Riverside County, California.**

**Jared Scheinuk**

**Law Clerk/Legal Runner for Kaushal Niroula**

DANIEL CARLOS GARCIA INTERVIEW ON MAY 5 2012                    3

1   Kaushal Niroula
    Defendant In Pro Per
2   Booking # 200910575
    Indio Jail
3   Post Office Box 1748
    Indio, California 92201

4

## IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF

5   ## CALIFORNIA

6

7   Kaushal Niroula,                          )        CASE NO. EDCV 12-814 VAP (JC)

8                                             )
                                              )        Affidavit of Enrique Tira
9            Plaintiff,                        )
                                              )
10  vs.                                       )        Date: 6/24/12
                                              )
11  Daniel Garcia                             )
                                              )
12           Defendant.                       )
    _____ )

13  ## DECLARATION OF ENRIQUE TIRA

14  **I, ENRIQUE TIRA, declare:**

15

16          1.   I am domiciled in Indio, California.
            2.   I am a licensed California private investigator with California license
                 number: 25535.
17          3.   I am the court appointed investigator for Kaushal Niroula in People v.
18               Niroula, et al, Case Number INF 064492, before the Honorable David B.
                 Downing, California Superior Court, Riverside County, Indio Division.
19          4.   I interviewed Daniel Garcia on May 4, 2012.
            5.   The attached transcription of the interview is an accurate depiction of the
20               statements that I took.
21          6.   To the best of my personal knowledge, Mr. Garcia's statements were
                 true, and he has in his possession cd's containing Mr. Niroula's
22               privileged phone calls which he obtained from the DA's office during the
                 discovery process.
23          7.   Mr. Garcia communicated to me that he has every intention of using
                 these phone calls as part of his defense and acknowledged having an
24               adverse interest to that of Mr. Niroula.
25          8.   Mr. Garcia is state's witness against Mr. Niroula in other criminal
                 matters encompassing multiple counties.
26          9.   George Lazarus, Robert Amparan, Chelsea Nelson, Angela Bean,
27               Gregory Johnson, and Stephen Swiegart are all members of the
                 California Bar and have provided legal services to Mr. Niroula in his
                 various cases.

28

10.     I declare under penalty of perjury and under the law of the State of California that the foregoing is true and correct and that I have electronically signed this declaration.

Executed this 24th day of June, 2012, at Indio, California.

*Enrique Tira*

_____

Enrique Tira, California License Number: 25535
Merito Enrique Tira Investigations
Indio, California